**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Arnold Kennedy,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>　　　　Defendant. | No. CIV 07-545-TUC-DCB (GEE)<br><br>**REPORT AND RECOMMENDATION** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §405(g). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

Pending before the court is a motion for summary judgment filed by the plaintiff on June 2, 2008, and a cross-motion for summary judgment filed by the defendant on July 30, 2008. [docs. #15, 19]

The Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's motion for summary judgment, deny the defendant's cross-motion, and

//

//

//

remand for payment of benefits.  The Commissioner's conclusion that Kennedy can return to his previous work in geographic data sales[1] is not supported by the record.

PROCEDURAL HISTORY

On April 12, 2005, Kennedy filed applications for disability insurance benefits and for supplemental security income benefits.  (Tr. 41-45, 71-74).  He alleged disability beginning on April 1, 2005, due to rheumatoid arthritis and hearing loss in his right ear.  (Tr. 41, 71).  His claims were denied initially (Tr. 41-45) and upon reconsideration.  (Tr. 36-38).

Kennedy requested review and on November 15, 2006, appeared with counsel at a hearing before Administrative Law Judge (ALJ) Norman R. Buls.  (Tr. 15-21, 34).  In his decision, dated March 6, 2007, the ALJ found Kennedy was not disabled.  (Tr. 15-21). Kennedy appealed and submitted additional evidence, but the Appeals Council denied review. (Tr. 4-10).  Kennedy subsequently filed the instant complaint appealing the Commissioner's final decision.  *See* 20 C.F.R. § 422.210(a).  He filed the instant motion for summary judgment on June 2, 2008.  The Commissioner filed the instant cross-motion for summary judgment on July 30, 2008.

Claimant's Work History and Medical History

From 1989 to 2004, Kennedy worked as a physical therapy technician, a sales executive with ski advertising, a sales executive with "demo & geo data" and a restaurant manager.  (Tr. 144).  From September of 2004 to the date of the decision, he had worked part-time as a "bar back" or bartender's assistant.  (Tr. 145).

Kennedy has had juvenile rheumatoid arthritis since the age of five.  (Tr. 281).  The record contains treatment notes from his primary care physician, Ramakrishnan Subbureddiar,

---

[1] The ALJ described the job in his decision as *demographic* data sales, but Kennedy explained at the hearing that *geographic* was the proper word.  (Tr. 20, 408).

- 2 -

1  M.D., and his rheumatologist, Sonia Bajaj, M.D. (Tr. 215, 221, 224, 227, 229, 230, 231, 232,
2  237, 272, 275, 276, 218, 228, 280, 281, 312, 318, 323, 324, 327, 332, 334, 337, 340 347).

3  In February of 2005, Subbureddiar diagnosed long standing rheumatoid arthritis. (Tr.
4  276). Kennedy's medication at that time included prednisone and ibuprofen. *Id.* In March of
5  2005, Kennedy developed pain and discharge in his left ear. (Tr. 272). Subbureddiar diagnosed
6  ruptured ear drum and prescribed amoxicillin. (Tr. 272). In June of 2005, Subbureddiar
7  completed a Medical Source Statement of Ability to do Work Related Activities (Physical)
8  form. (Tr. 259-263). Subbureddiar opined Kennedy could lift 20 pounds occasionally. (Tr.
9  259). He further commented Kennedy "can work only around 20 hrs./week (as a bartender)
10 can't work 40 hrs. per week." (Tr. 263).

11 In October of 2005, Subbureddiar completed a second Medical Source Statement of
12 Ability to do Work Related Activities (Physical) form. (Tr. 215). He opined Kennedy could
13 lift 50 pounds occasionally. *Id.* He found no further limitations other than "partial deafness Rt.
14 ear." (Tr 216). In a follow up letter to Kennedy's counsel, Subbureddiar made the following
15 clarification: "I spoke with Mr. Kennedy and he says he can lift 50 lbs. once a day on a very
16 good day and can't lift even 10 lbs. on a bad day. I agree as his disease has many remissions
17 and relapses." (Tr. 379).

18 In March of 2005, Bajaj examined Kennedy and gave her impression as follows:
19 "Systemic JRA. He has active arthritis on exam today." (Tr. 281). She performed a steroid
20 injection to his right wrist. *Id.* She prescribed methotrexate and folic acid. *Id.* The record
21 contains Bajaj's treatment notes from 3/10/05, 4/12/05, 6/13/05, 8/15/05, 1/31/06, 4/03/06 and
22 8/21/06 (Tr. 281, 280, 228, 218, 334, 332, 324).

23 On October 30, 2006, Bajaj examined Kennedy and gave her impression as follows:
24 "JRA. He continues to have flare-ups of arthritis on and off. . . Low back pain and right hip
25 pain. The symptoms are more with activities. . . Osteopenia. . . . His disease causes swelling
26 and stiffness in his joints . . . The amount of pain, swelling and stiffness may depend on the
27 amount of activity. He has difficulty working 20 hours a week and I do not think he can work
28 more." (Tr. 312).

1    In October of 2005, a non-examining state agency physician, Frank Shallenberger, M.D., reviewed the medical records and completed a Physical Residual Functional Capacity Assessment form. (Tr. 24, 205-12). He found Kennedy could lift 50 pounds occasionally and 25 pounds frequently. *Id.* He could stand and/or walk for a total of about 6 hours in an 8-hour workday. *Id.* He could sit for a total of about 6 hours in an 8-hour workday. *Id.* He should never climb ladders, ropes or scaffolds. *Id.*

In January of 2006, non-examining state agency physician, Fernando Gonzales-Portillo, M.D., reviewed the medical records and completed a Physical Residual Functional Capacity Assessment form. (Tr. 22, 179-186). He found Kennedy could lift 20 pounds occasionally and 10 pounds frequently. *Id.* He could stand and/or walk for a total of about 6 hours in an 8-hour workday. *Id.* He could sit for a total of about 6 hours in an 8-hour workday. *Id.* He should never climb ladders, ropes or scaffolds. *Id.* He could crawl only occasionally. *Id.* His handling and fingering were limited to occasional. *Id.* His hearing was limited on the right side. *Id.* He should avoid concentrated exposure to extreme cold, vibration and hazards such as machinery or heights. *Id.*

On November 15, 2006, Kennedy appeared with counsel at a hearing before ALJ Norman R. Buls. (Tr. 15-21, 34, 387). Kennedy testified that he works 20 hours per week as a bartender's helper. (Tr. 390-91). He brings up beer, washes dishes and cleans ashtrays. (Tr. 391). He does not work full-time because of pain and swelling in his hands and feet. (Tr. 391, 394, 401). His employer allows him to rest and elevate his feet if he needs to do so. (Tr. 399).

Kennedy testified that he has difficulty hearing. (Tr. 393). To understand conversations, he must face the speaker. (Tr. 393). "If I'm turned around the other way[,] then it's hard to hear." (Tr. 393).

Kennedy testified that he previously worked in customer service at a geographic data business. (Tr. 408). He would field complaints from customers and then consult with the technicians to try to solve the problem. (Tr. 409).

Kathleen McAlpine offered expert vocational testimony. (Tr. 408). The ALJ asked her to consider a hypothetical claimant who could lift 20 pounds occasionally and 10 pounds

1  frequently. (Tr. 411-12). He would need the option of alternating between sitting and standing.
2  *Id.* In addition, his "reaching, handling, fingering, feeling are limited to frequently with his left
3  hand and with his right hand, handling and fingering [are] limited to occasional[ly] . . . ." (Tr.
4  411-12). McAlpine opined such a person could return to Kennedy's past relevant work at the
5  geographic data business. (Tr. 411-12).

6  Kennedy testified he could no longer perform this work because he has trouble sitting
7  and using his hands. (Tr. 413).

## CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a "medically severe impairment or combination of impairments." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[2] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id.* If the claimant cannot perform any past work, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

The ALJ's Findings

At step one of the disability analysis, the ALJ found Kennedy "has not engaged in substantial gainful activity since April 1, 2005." (Tr. 20). At step two, he found Kennedy has severe impairments: "juvenile rheumatoid arthritis, hearing loss, mild to moderate degenerative joint disease of the lumbar spine and osteopenia of the right femoral neck . . . ." *Id.* At step three, the ALJ found Kennedy's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. *Id.* The ALJ then analyzed Kennedy's residual functional capacity (RFC). (Tr. 20). He found as follows:

> The claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally, 10 pounds frequently. He requires a sit-stand option allowing for sitting one-third of an eight-hour workday, standing two-thirds of an eight-hour workday. Claimant is precluded from climbing using ladders or scaffolds, is able to frequently climb ramps/stairs, balance, stoop kneel, crouch, occasionally crawl, avoid concentrated exposure to extreme cold, vibration and hazards (i.e., machinery, heights). Reaching, handling fingering and feeling are limited to frequently with the left hand; with his right hand[,] handling and fingering are limited to occasionally. The claimant has no functional ability to hear out of his left ear; he has decreased hearing in his right ear, but remains adequate to hear normal conversation.

---

[2] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 6 -

*Id.* At step four, the ALJ found Kennedy could perform his past relevant work in geographic data sales. *Id.* He based his finding on testimony presented at the hearing by a vocational expert. (Tr. 19). Accordingly, he concluded Kennedy was not disabled. (Tr. 20).

### STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*.

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The Commissioner may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the Commissioner

1 may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

### DISCUSSION

The decision of the ALJ should be set aside. He failed to give appropriate weight to the opinion of Kennedy's treating physician, Sonia Bajaj, M.D.

Bajaj opined that Kennedy was unable to work more than 20 hours per week. (Tr. 312). In her treatment notes dated October 30, 2006, she wrote her impression as follows: "[H]is disease causes swelling and stiffness in his joints . . . . The amount of pain, swelling and

1 stiffness may depend on the amount of activity.  He has difficulty working 20 hours a week and
2 I do not think he can work more." (Tr. 312).  The ALJ, however, rejected Bajaj's assessment
3 and concluded Kennedy can work full-time.  (Tr. 18).

4 "[T]reating physicians are employed to cure and thus have a greater opportunity to know
5 and observe the patient as an individual . . . ." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.
6 1996).  Accordingly, the opinion of a treating physician is ordinarily given the most weight in
7 the disability analysis. *Id.*  In this case, the ALJ discounted the opinion of the treating physician
8 and "accorded particular weight" to the reports from the state agency consulting physicians.
9 (Tr. 19).   This is permitted only if the ALJ provides specific and legitimate reasons for doing
10 so.  *Lester,* 81 F.3d at 830.  The ALJ in this case failed to do so.

11 The ALJ discussed Bajaj's opinion in his decision, but he gave it "little evidentiary
12 weight in the absence of supporting findings . . . and in view of the contrary findings in the rest
13 of the clinical record."  (Tr. 18).  Apparently, the ALJ believed Bajaj's treatment record did not
14 support her conclusion that Kennedy could not work full-time.  The court does not agree.

15 Bajaj's treatment record documents a patient with active, systemic rheumatoid arthritis.
16 (Tr. 281, 280, 228, 218, 334, 332, 324).  He has suffered from this disease since the age of five.
17 (Tr. 281).  "He has had flare-ups and remissions over the years . . . . *Id.*  He had a "flare-up .
18 . . in November 2004. . . . when "[h]e had to be admitted." *Id.*  Bajaj has treated his disease with
19 steroid injections, prednisone, Enbrel and methotrexate.  (Tr. 218, 228, 281).

20 Bajaj's treatment record  documents morning stiffness of 2-3 hours "depending on how
21 much work he does the day before."  (Tr. 327).  She notes he also has pain and swelling in his
22 hands, neck and back particularly after activity.  (Tr. 312, 327).  His "[l]ow back pain and right
23 hip pain are especially bothersome."  (Tr. 312).  He is "unable to sit for more than 30 minutes
24 because of stiffness." *Id.*  "He also has difficulty standing for more than 20-40 minutes or
25 walking for more than 20 minutes because of the feet pain." *Id.*

26 The treatment record as a whole supports Bajaj's conclusion that Kennedy's rheumatoid
27 arthritis limits his ability to work.  The disease limits his ability to sit, stand, walk and work with
28 his hands.  The record also indicates his symptoms are exacerbated by his level of activity.

Bajaj's opinion that Kennedy is limited to working 20 hours per week is supported by the treatment record.

Earlier in his decision, the ALJ made the following comment concerning the medical record: "Dr. Bajaj opines the claimant is limited to working no greater than 20 hours per week, although his physical examination was only positive for pain in the low back and trochanteric bursa on palpation, but with normal ranges of motion, and slight decreased range of motion of the wrists bilaterally." (Tr. 17).  Based on this passage, the court may infer that the ALJ discounted Bajaj's opinion in part because Kennedy displayed only a limited number of symptoms on the day Bajaj gave her opinion that Kennedy could not work full-time.  Bajaj, however, made her assessment based on the record as a whole and not based on Kennedy's symptoms on a particular day.  Accordingly, the fact that Kennedy did not display the full range of disabling symptoms on any one day is not a specific and legitimate reason for discounting her opinions.  *See, e.g., Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007) ("We . . . do not require that a medical condition be mentioned in every report to conclude that a physician's opinion is supported by the record.").

The ALJ failed to give appropriate weight to the opinion of Kennedy's treating physician, Bajaj.  "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  "Where we conclude that a claimant's testimony or a doctor's opinion should have been credited and, if credited, would have led to a finding of eligibility, we may order the payment of benefits." *Regennitter v. Commissioner*, 166 F.3d 1294, 1300 (9th Cir.1999); *see also Ghokassian v. Shalala*, 41 F.3d 1300, 1304 (9th Cir. 1994) (remanding for payment of benefits where the Secretary did not provide adequate reasons for disregarding treating physician's opinion).

In this case, the ALJ improperly discounted the opinion of Kennedy's treating physician.  Her opinion should be credited as a matter of law.  Crediting this evidence indicates Kennedy cannot work full time and is therefore disabled.  *See* SSR 96-8p; *see also Rollins v. Massanari*, 261 F. 3d 853, 859 (9th Cir. 2001)  ("An ability to keep to an 8-hour a day, 5-day a week

schedule without accumulating too many absences is a pre-requisite for many jobs."); *Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000); see e.g., *Ryan v. Commissioner of Social Sec.*, 528 F.3d 1194, 1196, 1202 (9th Cir. 2008) (Claimant was disabled because she "would not be able to maintain regular attendance in the work place due to extreme anxiety and continuing depression, especially when [placed] in a work like situation. . . .").

Kennedy has been disabled since April 1, 2005. *See* (Tr. 15); *Loza v. Apfel*, 219 F.3d 378, 394 (5th Cir. 2000) ("Factors relevant to the determination of the date of disability include the individual's declaration of the date of when the disability began, work history and available medical history."); *Swanson v. Secretary*, 763 F.2d 1061, 1066 n.2 (9th Cir. 1985) (The claimant's onset date should be adopted by the Commissioner if it is consistent with the available evidence.); *Willbanks v. Secretary*, 847 F.2d 301, 304 (6th Cir. 1988) (same). Remand of the case would serve no useful purpose. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Holohan v. Massanari* 246 F.3d 1195, 1210 (9th Cir. 2001); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) ("We may direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose."); *See also* SSR 96-2p ("If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e. it must be adopted."). A finding of disability should be entered.

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's Motion for Summary Judgment, deny the defendant's Motion for Summary Judgment, and remand for payment of benefits. [docs. #15, 19]

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation. If objections are

1  not timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-*
2  *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

3        The Clerk of the Court is directed to send a copy of this Report and Recommendation
4  to all parties.

5        DATED this 16th day of September, 2008.

*[signature]*
Glenda E. Edmonds
United States Magistrate Judge

- 12 -